## Lancaster Bone Fertilizer Co., Inc., v. Weaver. No. 2

*Charles W. Eaby*, for rule; *J. Farrel Garvey*, contra.

GROFF, P. J., May 14, 1932.—This is a rule granted to show cause why an exemption allowed Joseph M. Weaver, under the Act of April 9, 1849, P. L. 533, and its supplements, should not be set aside and stricken from the records.

The facts are these: Lancaster Bone Fertilizer Company, Inc., entered a judgment against S. R. Weaver, in the Court of Common Pleas of Lancaster County, to November Term, 1930, No. 298, for $828.35, with interest from March 26, 1930, and less some credits.

Subsequent thereto, the plaintiff in the judgment caused a fi. fa. to be issued against S. R. Weaver, the defendant, which is entered in the Court of Common Pleas of Lancaster County, in the execution docket, to January Term, 1931, No. 53, and certain goods were levied upon, including three horses and harness, six cows, four calves, one roller, one riding cultivator, one hay loader, tobacco lath, one Ford coupe and all other goods on the premises not herein mentioned.

Joseph M. Weaver filed a property claim, in which he claimed one horse, four Holstein cows, two Holstein cows, four calves, one field roller, one riding cultivator, one hay loader, tobacco lath, one Ford coupe, one spring wagon, all chickens and one plow.

The sheriff filed his petition for an interpleader, and a rule was granted upon Joseph M. Weaver, the claimant, to appear and maintain or relinquish his respective claims to the property levied on, under the above said execution, and which he claimed.

The issue was framed. The claimant filed no bond, as required by the act of assembly, but, notwithstanding that fact, instead of the plaintiff in the execution having the prothonotary certify a copy of its docket entries, showing that no bond had been filed, and having the goods sold, as should have been done, under the Act of April 7, 1927, P. L. 174, it tried the issue in the court of common pleas and obtained a judgment against Joseph M. Weaver, the claimant, for $530.

On this judgment a fi. fa., in which Joseph M. Weaver was defendant, was issued out of the Court of Common Pleas of Lancaster County to April Term, 1932, No. 17. The sheriff levied upon certain goods in the possession of Joseph M. Weaver, which we will not enumerate, but from a comparison of the levy made upon the execution issued against S. R. Weaver and the execution issued against Joseph M. Weaver, it would seem to us to include the goods claimed by Joseph M. Weaver and levied upon on the execution against S. R. Weaver. About that, we think, there is no mistake, although there is no evidence before us to positively determine that fact.

Joseph M. Weaver, in claiming the $300 exemption, had appraised to him four cows, one horse, harness, geese, cultivator, rake, tobacco lath, one-half of

tobacco crop, corn and one hay loader, all of which was appraised at and for the sum of $232.50. The one-half of the tobacco crop and the corn apparently were not included in the execution against S. R. Weaver. I believe the evidence in the case shows that he was a farmer on one of the farms controlled by S. R. Weaver.

Is Joseph M. Weaver entitled to his $300 exemption under those circumstances? It is a well-settled principle of law that "where the defendant in an execution claims the benefit of the debtor's exemption, the burden is always on the plaintiff to show that the exemption ought not to be allowed:" Pierce v. Boalick, 42 Pa. Superior Ct. 218.

Section one of the Act of April 9, 1849, P. L. 533, is as follows:

"Be it enacted, etc., that in lieu of the property now exempt by law from levy and sale on execution, issued upon any judgment obtained upon contract and distress for rent, property to the value of $300, exclusive of all wearing apparel of the defendant and his family, and all Bibles and school books in use in the family (which shall remain exempted as heretofore), and no more, owned by or in possession of any debtor, shall be exempt from levy and sale on execution or by distress for rent."

As we understand the above-quoted act, the property exempt by law from levy and sale must be claimed upon a judgment obtained upon a contract or distress for rent, and, therefore, it seems to us that the question to be determined here is, did the claim upon which the execution was issued arise upon contract? It did not arise upon a distress for rent. Was there an implied contract on the part of Joseph M. Weaver when the issue was framed to try the title to the goods claimed by him, and for which he gave no bond, that he would pay for the goods, if they were found to be the property of S. R. Weaver, the defendant in the execution, or was the judgment here recovered in an action of tort or an action ex delicto? If it was recovered in an action of the latter kind, then Joseph M. Weaver is not entitled to his exemption. See Kenyon v. Gould et al., 61 Pa. 292.

We think the conclusion that there was an implied contract that Joseph M. Weaver would pay, and the suit to recover the value of the goods claimed was on that theory, cannot be maintained. In this case there was a lawful levy upon the goods, and the claimant, without any color of right, according to the verdict of the jury, claimed and took possession of those goods. This, in our judgment, would constitute a trespass. It is the unlawful taking possession of the personal property of another by one knowing that it did not belong to him.

Mr. Justice Gray, in the case of Weller et al. v. Hanaur et al. (Circuit Court for the Eastern District of Pennsylvania), 95 Fed. 236, 243, said:

"Trespass to personal property is a substantial and real interference with rightful possession. It is an active aggression on a right of property and involves active affirmative and personal interference and participation. The law considers the matter of causation practically—so as to secure the ends of justice. A train of antecedents, but for which the complained-of fact would not exist, may always be pointed out, but it does not follow that any one of them is a juridical cause of such fact. The practical manner in which the common law deals with the subject is evidenced in the ancient maxim, 'In jure, causa proxima, non remota, spectatur.'"

What would be the practical effect of allowing this claim for exemption to stand? A issues an execution against B, and B's goods are levied upon. C has no claim or ownership in the goods whatsoever, but he files a claim, saying the goods are his. An issue is framed, a trial is had, and it is determined that

the goods belong to B, the defendant in the execution, and are of the value of $300. A, to recover his money, issues an execution against B on the judgment recovered against him. C claims his exemption of $300, and it is allowed. C then has $300 that never belonged to him and which rightfully belongs to A. This cannot be the law.

However, excluding this latter illustration, we are convinced that in this case Joseph M. Weaver interposed a substantial and real interference with the rightful possession of the goods when he claimed and took possession of them, knowing they were not his, and thereby committed a trespass. The verdict recovered in this action was the amount of damages caused by reason of the said trespass. We, therefore, make the rule absolute to show cause why the exemption should not be stricken off.

The exemption is stricken off and set aside. Rule absolute.

From George Ross Eshleman, Lancaster, Pa.